IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

YVONNE WEHRER          )
                       ) No. 17-804
                       )
     v.

COMMISSIONER OF SOCIAL
SECURITY

**OPINION AND ORDER**

**SYNOPSIS**

Plaintiff filed an application for social security disability and disability insurance benefits. Plaintiff alleged disability due to various mental and physical impairments, some of which were related to injuries sustained as the result of a car accident. Plaintiff's application was denied initially, and following hearing before an Administrative Law Judge ("ALJ"). The Appeals Council denied her request for review. The parties' Cross-Motions for Summary Judgment are before the Court. For the following reasons, Plaintiff's Motion will be granted, and Defendant's denied. This matter will be remanded for further proceedings.

**OPINION**

**I.     STANDARD OF REVIEW**

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g) 6 and 1383(c)(3) 7. Section 405(g) permits a district court to review the transcripts and records upon which a determination of the Commissioner is based, and the court will review the record as a whole. See 5 U.S.C. §706. When reviewing a decision, the

district court's role is limited to determining whether the record contains substantial evidence to support an ALJ's findings of fact. Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)). If the ALJ's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); Richardson, 402 U.S. at 390.

A district court cannot conduct a de novo review of the Commissioner's decision, or re-weigh the evidence of record; the court can only judge the propriety of the decision with reference to the grounds invoked by the Commissioner when the decision was rendered. Palmer v. Apfel, 995 F.Supp. 549, 552 (E.D. Pa. 1998); S.E.C. v. Chenery Corp., 332 U.S. 194, 196 - 97, 67 S. Ct. 1575, 91 L. Ed. 1995 (1947). Otherwise stated, "I may not weigh the evidence or substitute my own conclusion for that of the ALJ. I must defer to the ALJ's evaluation of evidence, assessment of the credibility of witnesses, and reconciliation of conflicting expert opinions. If the ALJ's findings of fact are supported by substantial evidence, I am bound by those findings, even if I would have decided the factual inquiry differently." Brunson v. Astrue, No. No. 10-6540, 2011 U.S. Dist. LEXIS 55457 (E.D. Pa. Apr. 14, 2011) (citations omitted). Nonetheless, I am not required to read the ALJ's opinion "in a vacuum." Knox v. Astrue, No. No. 9-1075, 2010 U.S. Dist. LEXIS 28978, at *22 (W.D. Pa. May 26, 2010).

II.     THE PARTIES' MOTIONS

Plaintiff challenges the ALJ's findings that Plaintiff failed to meet various Listings. In particular, she avers that the ALJ erred in failing to find that she met Listings §§ 1.02A, 1.04, 1.07, and 12.06. A Plaintiff's failure to point to evidence of conditions required by the Listings

is fatal to such a challenge.  See Arrington v. Colvin, 216 F. Supp. 3d 217, 235 (D. Mass. 2016) (citing cases).

Plaintiff argues that the ALJ erred in assessing Listing § 1.04, which addresses spinal disorders.  The Listing "requires the claimant to produce evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis," along with other requirements.  See, e.g., Harris v. Comm'r of Soc. Sec., No. 11-2961, 2012 U.S. Dist. LEXIS 140308, at *12 (D.N.J. Sep. 27, 2012) (citing 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.04).  Plaintiff acknowledges that the diagnostic studies of record alone are likely insufficient to meet the Listing, but contends that her complaints of pain were consistent with the studies' findings and diagnoses of spondylosis and lumbar facet syndrome.  Crediting her pain complaints and accepting those diagnoses, however, does not constitute the required evidence.  Plaintiff points to no evidence that would mandate or support findings that meet the specific requirements of the Listing.

In addition, Plaintiff argues that the medical records demonstrate that her left femoral mononeuropathy meets Listing § 1.02A, which addresses major dysfunction of a joint.  In particular, she complains that the ALJ summarily rejected the reports of Dr. Mathew and Dr. Klein, who evaluated her for long-term disability insurance and the litigation resulting from her accident.  Listing 1.02 A requires, inter alia, certain symptoms resulting in "inability to ambulate effectively."  "Inability to ambulate effectively means an extreme limitation of the ability to walk."  Godfrey v. Astrue, No. 10-565, 2011 U.S. Dist. LEXIS 51145, at *14 (W.D. Pa. May 12, 2011) (quoting 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, Listing 1.00B2b).  Plaintiff does not explain how the records to which she points, which merely recount Plaintiff's various injuries and diagnoses, and broadly suggest that she remained symptomatic, would support a finding that she meets the specific requirements of Listing § 1.02A; the connection is not apparent.

Plaintiff also asserts that the ALJ failed in his assessment of Listing 1.07, which addresses fracture of an upper extremity. As Defendant points out, Plaintiff's wrist condition did not result from a fracture, which is a prerequisite for Listing 1.07; indeed, she ascribes her wrist condition to tendonitis. Finally, Plaintiff argues that the combination of her impairments impacts her ability to perform even the most minimal activities of daily living. Plaintiff, however, does not point to a Listing that might apply to a combination of her impairments, or that the ALJ arguably should have evaluated. I reject Plaintiff's arguments.

Finally, in a different Section of her brief (Section II), Plaintiff contends that the ALJ failed to evaluate whether she met Listing 12.06, for PTSD. To satisfy Paragraph B of that Listing, a claimant's mental impairment must result in at least two of marked restrictions of activities of daily living, marked difficulties in social functioning, marked difficulties in maintaining concentration, persistence, or pace, or repeated episodes of decompensation, of extended duration. The ALJ determined that Plaintiff had only mild restrictions or difficulties in daily living and social functioning, and moderate difficulties with concentration, persistence, or pace; she did not have qualifying episodes of decompensation. In challenging these findings, Plaintiff refers to her diagnoses of anxiety and severe depression and her subjective complaints, but does not explain exactly how the ALJ's analysis – which was thorough and supported by citations to the medical record – was improper. I reject Plaintiff's contentions.

### A. Residual Functional Capacity ("RFC")

Next, Plaintiff argues that the ALJ erred, in various respects, in crafting and employing the RFC. First, Plaintiff complains that the ALJ did not incorporate the report of Shannon Brody, PT. In his discussion, the ALJ afforded Ms. Brody's opinion little weight. The ALJ did so both because Ms. Brody is not an acceptable medical source, and because Ms. Brody's report

stated that the results of her testing "suggest significant observational and evidenced based contradictions resulting in consistency of effort discrepancies, self-limiting behaviors, and/or sub-maximal effort. The overall results of this evaluation do not represent a true and accurate representation of Ms. Wehrer's overall physical capabilities." Based on Ms. Brody's own concerns about the accuracy of her evaluation results, the ALJ did not err in assigning little weight thereto.

B. **Vocational Expert ("VE") Testimony**

As a related matter, Plaintiff contends that the ALJ improperly relied on the VE testimony to conclude that she is able to perform work that exists in sufficient numbers. In particular, Plaintiff contends that the existence of 5,000 jobs in the national economy is insufficient. "Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications. Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered 'work which exists in the national economy.'" Torres v. Shalala, No. 94-5492, 1995 U.S. Dist. LEXIS 7172, at *12 (E.D. Pa. May 22, 1995). The Social Security Act provides that "'work which exists in the national economy' means work which exists in significant numbers either in the region where [claimant] lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A). This question is dispositive, because if Plaintiff is unable to adjust to other work that exists in significant numbers, she will be found disabled. Accomando v. Comm'r of Soc. Sec., No. 13-1391, 2014 U.S. Dist. LEXIS 160909, at *8 (D.N.J. Nov. 14, 2014).

There is no bright-line rule regarding what constitutes a significant number of jobs, in accordance with applicable regulations. As my sister Court has noted, some courts have adopted

5

the approach taken in the Sixth Circuit, in which a judge reviews the context of the particular case, "including, but not limited to, the level of claimant's disability, the reliability of vocational expert and claimant's testimony, the distance the claimant is capable of traveling, the isolated nature of the jobs, the types and availability of such work." Johnson v. Comm'r of SSA, No. 07-3137, 2008 U.S. Dist. LEXIS 71638, at *52 (D.N.J. Sep. 19, 2008) (citing Hall v. Bowen, 837 F. 2d 772 (6th Cir. 1988).

Not unexpectedly, courts have reached potentially differing conclusions about the sufficiency of 10,000 jobs nationally. For example, in Sovan v. Berryhill, No. 17-5238, 2017 U.S. Dist. LEXIS 155471, at *12 (W.D. Wash. Sep. 22, 2017), the court found that the identification of 10,000 jobs nationally, but none regionally, was insufficient. In Sovan, the Court observed that District Courts approving a similar number all did so in combination with considering regional numbers. Id. at *11-12 (citing cases).

As Sovan suggests, cases that have approved numbers around 10,000 are distinguishable from the one at bar. For example, in Hoffman v. Astrue, No. 09-5252, 2010 U.S. Dist. LEXIS 26207 (W.D. Wash. Feb. 8, 2010), the court declined to find that 9,000 national and 150 regional jobs was insufficient. In that case, however, the plaintiff alleged only that the regional number was insufficient, and did not challenge the number of national jobs available; the Court's focus remained on regional availability. Id. at *43. In Johnson v. Chater, 108 F.3d 178, 180 (8th Cir. 1996), the VE testified to the local availability of 200 jobs and the national availability of 10,000 jobs; in that case, however, the court noted that the VE testified that the figures were representative of other jobs that the claimant could perform, and identified one such job. Id. Finally, the sole case to which Defendant points, in which the VE testified to the existence of 200 jobs, referred to regional jobs only; the Court cursorily indicated that the number of regional

jobs was "a clear indication that there exists in the national economy" other work that claimant could perform. Craigie v. Bowen, 835 F. 2d 56, 58 (3d Cir. 1987).

In this case, the ALJ relied on the following VE testimony:

> There are a limited number of jobs including sedentary Guard jobs. There are over 5,000 of these in the economy. Example could be that of 379.367-010. There are sedentary Call Out Operator jobs. There are over 5,000 of these in the economy. Example could be that of 237.6 – excuse me. 237.367 and there are Membership Solicitors. No, Your Honor. I'm sorry. There would be – those would be the limits in terms of the jobs based on that hypothetical.

Hearing Transcript, p. 76-77.

On this particular record,[1] I am disinclined to find that the ALJ's conclusion regarding the Plaintiff's ability to adjust to other work is supported by substantial evidence. The VE stated that there were "over" 5,000 of the identified jobs, and the amount and significance of such overage is unclear; in addition, it is not entirely clear whether the job of Membership Solicitor is unavailable to Plaintiff. Moreover, because the VE offered 379.367-010 as an "example," it is unknown whether that job represents the only available option in its category. Moreover, the VE did not identify the number of jobs available regionally, which would aid in the pertinent assessment. Indeed, the VE merely testified as to job availability in "the economy," without qualification. Based on the entire record, and the ambiguity of the VE's testimony, remand is warranted.

### C. Credibility

Finally, Plaintiff argues that the ALJ failed to look at the "big picture" when evaluating her credibility, and overemphasized her activities and benefits from treatment. According to Plaintiff, the ALJ improperly considered her desire to have a child as evidence that she was not

---

[1] I emphasize that I do not hold that 10,000 jobs can never be a sufficient number; my holding is limited to the particular circumstances of this case.

disabled; he also failed to account for Plaintiff's long work history, and treated her as looking for a "handout." It is well-established that the ALJ is charged with the responsibility of determining a claimant's credibility. Weber v. Colvin, No. 15-109, 2016 U.S. Dist. LEXIS 94348, at *18 (W.D. Pa. July 20, 2016). It is axiomatic that a severe impairment does not necessarily entitle a claimant to an RFC that accounts for that impairment, and that credibility assessments are entitled to a high degree of deference. It is also true that work history alone is not dispositive of credibility. Thompson v. Astrue, No. 09-519, 2010 U.S. Dist. LEXIS 98112, at *11 (W.D. Pa. Sep. 20, 2010). The grounds for Plaintiff's assertions regarding Plaintiff's desire for a child, and discounting her work history, are unclear. The ALJ found that Plaintiff's statements were "not entirely consistent with the evidence." In so doing, he thoroughly and carefully set forth a reasonable basis for that conclusion, including an evaluation of Plaintiff's medical records. There is no evidence that the ALJ was, as Plaintiff suggests, biased or unfair.

## CONCLUSION

In conclusion, remand is warranted for the limited purpose of further consideration of the jobs available to Plaintiff under the RFC. In all other respects, under applicable standards, I cannot conclude that the ALJ's decision was unsupported by substantial evidence. An appropriate Order follows.

BY THE COURT:

_/s/ Donetta W. Ambrose_

Donetta W. Ambrose

Senior Judge, U.S. District Court

DATED: May 3, 2018

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

YVONNE WEHRER )
) No. 17-804
)
    v.

COMMISSIONER OF SOCIAL
SECURITY

**ORDER**

AND NOW, this 3rd day of May, 2018, it is hereby ORDERED, ADJUDGED, and DECREED that Plaintiff's Motion is DENIED, and Defendant's GRANTED. This matter is remanded for further proceedings consistent with the foregoing Opinion.

        BY THE COURT:

        */s/ Donetta W. Ambrose*

        Donetta W. Ambrose

        Senior Judge, U.S. District Court